NATIONAL ADVERTISING COMPANY,
Plaintiff–Appellee,

v.

CITY OF ORANGE, et al.,
Defendants–Appellants.

Nos. 86–6552, 87–5739.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 6, 1987.

Decided Nov. 14, 1988.

Peter J. Ferguson and Larry J. Roberts,
Ferguson, Praet & Sherman, Orange, Cal.;

Bradley C. Withers, Cotkins, Collins & Franscell, Los Angeles, Cal., Furman B. Roberts, City Atty., Orange, California, for defendants-appellants.

Gary S. Mobley and Stephen F. Dial, Case, Schroeder, Knowlson, Mobley & Burnett, Newport Beach, Cal., for plaintiff-appellee.

Before BROWNING, FLETCHER and POOLE, Circuit Judges.

JAMES R. BROWNING, Circuit Judge:

National Advertising applied for permits to erect billboards in the City of Orange, California. The City denied the applications, and stipulates it did so "solely because of the provisions of the Sign Ordinance prohibiting off-site signs."

Orange City's Sign Ordinance bars throughout the City "general or billboard advertising signs," defined as "sign[s] which direct[ ] attention to a business, commodity, industry or other activity which is sold, offered or conducted elsewhere than on the premises upon which such sign is located, and which may be sold, offered or conducted on such premises only incidentally, if at all." Orange Municipal Code §§ 17.78.030F, 17.78.080A. Excepted from this general prohibition are certain governmental signs and flags, memorial tablets, recreational signs, and temporary political, real estate, construction, and advertising signs. Orange Municipal Code § 17.78.050.

National filed suit alleging the City's ordinance was unconstitutional on its face and seeking declaratory and injunctive relief. Both parties moved for summary judgment. The district court granted National's motion in part, holding the ordinance unconstitutional because it prefers commercial over noncommercial speech, and because, by allowing certain exceptions, it regulates noncommercial speech on the basis of content. The court issued an injunction ordering the City to process National's applications without regard to the unconstitutional provisions. The City denied the applications. National moved for a civil contempt order, which the court granted. The City appeals both the order invalidating its ordinance and the contempt order.

I

The City contends its ordinance prohibits only off-site signs relating to commercial activity. The plain language of the ordinance precludes this construction.

Section 17.78.080, as defined by section 17.78.030, bans advertising signs related to "a business, commodity, industry *or other activity* which is sold, offered or conducted" elsewhere than on the premises. (emphasis added). The City suggests "activity" means only commercial activity. In *Metromedia, Inc. v. City of San Diego*, the Supreme Court accepted the California Supreme Court's holding that the word "activity" in a similar ordinance encompassed noncommercial speech. 453 U.S. 490, 494 n. 2, 503, 101 S.Ct. 2882, 2885 n. 2, 2890, 69 L.Ed.2d 800 (1981) (plurality opinion). The exceptions to the ban allowed by section 17.78.050 support this interpretation; many involve noncommercial speech and would be rendered meaningless by the City's interpretation.[1]

We interpret Orange's ordinance as prohibiting all signs relating to activity not on the premises on which the sign is located (except those exempt by section 17.78.050), and permitting all signs relating to activity on the premises. Whether the message on the signs is commercial or noncommercial is irrelevant: both commercial and noncommercial signs are permitted if they relate to

---

1. The City also equates "activity" with "attraction" and argues the scope of the Orange City ordinance is the same as that of ordinances sustained in *Suffolk Outdoor Advertising Co. v. Hulse*, 439 U.S. 808, 99 S.Ct. 66, 58 L.Ed.2d 101 (1978), and *Major Media of the Southeast, Inc. v. City of Raleigh*, 792 F.2d 1269 (4th Cir.1986).

The Supreme Court rejected this interpretation of *Suffolk* in *Metromedia*, 453 U.S. at 499, 101 S.Ct. at 2888, the ordinance in *Major Media* expressly excluded noncommercial messages from its prohibitions. *Major Media*, 792 F.2d at 1272.

activity on the premises and prohibited if they do not.

## II

■ Standards for assessing the constitutionality of billboard restrictions are found in the Supreme Court's opinions in *Metromedia* and *Members of the City Council v. Taxpayers for Vincent,* 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984).

Under these standards, Orange's Sign Ordinance is valid as applied to commercial billboards. The City may prohibit such billboards entirely in the interest of traffic safety and aesthetics, *Metromedia,* 453 U.S. at 507–10, 101 S.Ct. at 2892–94; *Vincent,* 466 U.S. at 806–07, 817, 104 S.Ct. at 2129–30, 2135, and may also prohibit them except where they relate to activity on the premises on which they are located. *Metromedia,* 453 U.S. at 510–12, 101 S.Ct. at 2893–95; *see also Naegele Outdoor Advertising, Inc. v. City of Durham,* 844 F.2d 172, 173–74 (4th Cir.1988).

Stricter standards apply to the restriction of noncommercial speech. Under *Metromedia,* an ordinance is invalid if it imposes greater restrictions on noncommercial than on commercial billboards or regulates noncommercial billboards based on their content. 453 U.S. at 513, 516, 101 S.Ct. at 2895, 2897. We need not decide whether the Orange ordinance passes the first test, because it clearly fails the second.

Merely treating noncommercial and commercial speech equally is not constitutionally sufficient. The first amendment affords greater protection to noncommercial than to commercial expression. *Metromedia,* 453 U.S. at 506–07, 520, 101 S.Ct. at 2982, 2899. Regulations valid as to commercial speech may be unconstitutional as to noncommercial. *Id.* at 506–07, 101 S.Ct. at 2891–92; *Bolger v. Youngs Drug Products Corp.,* 463 U.S. 60, 65, 103 S.Ct. 2875, 2879, 77 L.Ed.2d 469 (1983).

Thus, "[a]lthough the city may distinguish between the relative value of different categories of commercial speech, the city does not have the same range of choice in the area of noncommercial speech to evaluate the strength of, or distinguish between, various communicative interests." *Metromedia,* 453 U.S. at 514, 101 S.Ct. at 2896. Orange's ordinance breaches this basic principle in a manner expressly proscribed by *Metromedia.*

The exemptions to the Orange City ordinance's restrictions, like those before the *Metromedia* Court, require examination of the content of noncommercial messages. In most instances, whether offsite noncommercial signs are exempted or prohibited turns on whether or not they convey messages approved by the ordinance.[2]

---

2. Section 17.78.050 of the Orange Municipal Code reads:

*Exemptions from Chapter Provisions.* The following signs and devices shall not be subject to the provisions of this chapter:

A. Signs placed by a government body or public utility, required to be maintained by law;

B. Memorial tablets or plaques placed by recognized historical agencies;

C. Flags of the national or state government; or not more than three flags of nonprofit religious, charitable or fraternal organizations;

D. Nonelectric signs within recreational facilities, which are not visible from any public street;

E. Temporary political signs provided the signs are removed within seven days following the purpose for which they were erected;

F. Temporary nonelectric real estate or construction signs, not exceeding six square feet in developed residential areas, or thirty-two square feet in professional, commercial, industrial, and undeveloped residential areas;

G. Temporary advertising displays, approved by the Planning Department, for grand openings, special City events and similar purposes, excluding however, promotional advertising displays not associated with a grand opening, shall be authorized by the Director of Planning and Development Services for one fifteen-day period during the calendar year;

H. Small nonelectric portable and/or temporary signs within a building;

I. Small real estate pennants used for an open house activity;

J. Small nonelectric convenience signs which facilitate traffic flow and safety, such as entrance, exit, caution, parking, right or left turn only, stop, etc., provided such signs do not exceed six square feet;

K. Copy which is placed upon a sign designed as a changeable or replaceable copy reader board, including theater marquees, and other similar signs[.]

The Constitution forbids the selective prohibition of protected noncommercial speech based on its content. "With respect to noncommercial speech, the city may not choose the appropriate subjects for public discourse: 'To allow a government the choice of permissible subjects for public debate would be to allow that government control over the search for political truth.'" *Id.* at 515, 101 S.Ct. at 2896 (quoting *Consolidated Edison, Co. v. Public Serv. Comm'n*, 447 U.S. 530, 538, 100 S.Ct. 2326, 2333, 65 L.Ed.2d 319 (1980)); *see also Vincent*, 466 U.S. at 816, 104 S.Ct. at 2134.

Because the exceptions to the restriction on noncommercial speech are based on content, the restriction itself is based on content. *Metromedia*, 453 U.S. at 520, 101 S.Ct. at 2899. It is therefore unconstitutional unless the City establishes the "regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end," *Perry Educational Ass'n v. Perry Local Educators Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983). This did not save the ordinance in *Metromedia:* the Court relied on San Diego's allowance of some billboards as evidence that its interests in traffic safety and aesthetics, while "substantial," fell shy of "compelling." *Compare* 453 U.S. at 507–08, 101 S.Ct. at 2892–93 (finding interests substantial) *with id.* at 520, 101 S.Ct. at 2899 (finding interests insufficient to justify content-based infringement on noncommercial speech). The same evidence condemns Orange's ordinance.

### III

Cities are not powerless to regulate billboards containing noncommercial messages. The City of Orange remains free to redraft its ordinance to conform to the Constitution by avoiding content-based distinctions in its treatment of noncommercial billboards.[3]

Under *Metromedia*, the City's interests in traffic safety and aesthetics are sufficient to justify continued content-neutral regulation of the noncommunicative aspects of billboards, such as size, spacing and design. *See* 453 U.S. at 502, 101 S.Ct. at 2889. Indeed, banning noncommercial billboards entirely from residential areas is permitted, as long as all such billboards are banned and ample alternative channels exist for communication of the information. *Id.* at 516, 101 S.Ct. at 2897; *see Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 648–49, 654–55, 101 S.Ct. 2559, 2564–65, 2567–68, 69 L.Ed.2d 298 (1981).

Accordingly, we hold only that the City cannot analyze the content of outdoor noncommercial messages to determine whether they are allowed, and if so where. *Metromedia*, 453 U.S. at 515, 101 S.Ct. at 2896 ("Because some noncommercial messages may be conveyed on billboards throughout the commercial and industrial zones, San Diego must similarly allow billboards conveying other noncommercial messages throughout those zones.").

It does not necessarily follow that the entire ordinance is invalid. As a general rule only the part of an enactment that is constitutionally infirm will be invalidated, leaving the rest intact. *See Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 107 S.Ct. 1476, 1480, 94 L.Ed.2d 661 (1987); *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 504, 105 S.Ct. 2794, 2802, 86 L.Ed.2d 394

---

**3.** National argues that limiting noncommercial billboards to advocacy of onsite activities is itself an unconstitutional content-based regulation. Though not squarely before the *Metromedia* Court, the plurality opinion may suggest an offsite/onsite distinction between noncommercial messages would be invalid. *See* 453 U.S. at 513, 101 S.Ct. at 2895 (in striking down a "general ban" on noncommercial signs, the Court said, "The fact that the city may value commercial messages relating to onsite goods and services more than it values commercial communi-

cations relating to offsite goods and services *does not justify prohibiting an occupant from displaying its own ideas or those of others*.") (emphasis added). *But see Rzadkowolski v. Village of Lake Orion*, 845 F.2d 653, 655 (6th Cir. 1988); *Wheeler v. Commissioner of Highways*, 822 F.2d 586, 591 (6th Cir.1987) (upholding such a distinction as a content-neutral time, place and manner regulation). Because the content-based exemptions require us to invalidate all of the ordinance's restrictions on noncommercial billboards, we reserve judgment on this issue.

(1985).[4] Whether partial invalidation is appropriate depends on the intent of the City in passing the ordinance and whether the balance of the ordinance can function independently. *Alaska Airlines*, 107 S.Ct. at 1480; *Brockett*, 472 U.S. at 506, 105 S.Ct. at 2803 As noted above, the City has consistently argued it intended the ordinance to apply only to commercial signs. Since the ordinance can function effectively if so limited, we invalidate it only as to signs bearing noncommercial messages. *Cf. Metromedia*, 453 U.S. at 522 n. 26, 101 S.Ct. at 2900 n. 26 ("Since our judgment is based essentially on the inclusion of noncommercial speech within the prohibitions of the ordinance, the California courts may sustain the ordinance by limiting its reach to commercial speech, assuming the ordinance is susceptible to this treatment.").

## IV

We turn to the contempt order. The district court held the City in contempt for failing to comply with its injunction ordering Orange to process National's applications without regard for the unconstitutional provisions of the ordinance. We review this determination for abuse of discretion. *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir.1986).

The contempt order was remedial and therefore civil. Substantial compliance with the court's injunction is a defense to civil contempt. *General Signal Corp.*, 787 F.2d at 1379; *Vertex Distrib. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 891–92 (9th Cir.1982). A finding of contempt is inappropriate where the party has taken "all reasonable steps" to comply with the court's instructions. *General Signal Corp.*, 787 F.2d at 1379; *Vertex*, 689 F.2d at 892. As we noted at the outset, the City based its initial denial on the unconstitutional aspects of the ordinance. However, after the district court's initial ruling the City again reviewed National's applications and this time rejected them because the structure and design of the proposed billboards exceeded maximum size and height limitations and violated other restrictions unrelated to the invalid sections of the sign ordinance, as the City was allowed to do under the district court's amended order. Because the City substantially complied with the injunction, the contempt order is vacated.[5]

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED for further proceedings consistent with this opinion. Each party shall bear its own costs.

---

4. In *Metromedia*, the Supreme Court remanded to the state court for a determination of whether a severability clause saved any portion of San Diego's ordinance. 453 U.S. at 521 n. 26, 101 S.Ct. at 2899–2900 n. 26. Because this appeal does not arise from state court, we conduct an independent review to determine whether the unconstitutional portions of Orange's ordinance are severable. *See, e.g., Champlin Ref. Co. v. Corporation Comm'n*, 286 U.S. 210, 234–35, 52 S.Ct. 559, 564–65, 76 L.Ed. 1062 (1932); *Shouse v. Pierce County*, 559 F.2d 1142, 1147–48 (9th Cir.1977).

5. The City correctly notes that "a civil contempt order may fall if the underlying injunction is invalidated." *Scott & Fetzer Co. v. Dile*, 643 F.2d 670, 675 (9th Cir.1981) (relying on *United States v. United Mine Workers of America*, 330 U.S. 258, 295, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947)); *see In re Merrill Lynch Relocation Mgt., Inc.*, 812 F.2d 1116, 1119 (9th Cir.1987). However, we reverse only the district court's conclusion that the ordinance was unconstitutional as it applied to commercial signs. The court's injunction, therefore, was valid as applied to applications for noncommercial billboards.