**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DESERT OUTDOOR ADVERTISING,
INC., a California corporation,
           *Plaintiff-Appellant,*

v.

CITY OF OAKLAND,
           *Defendant-Appellee.*

No. 05-15501

D.C. No.
CV-03-01078-MJJ

OPINION

Appeal from the United States District Court
for the Northern District of California
Martin J. Jenkins, District Judge, Presiding

Argued and Submitted
March 21, 2007—San Francisco, California

Filed October 30, 2007

Before: Betty B. Fletcher and Richard R. Clifton,
Circuit Judges, and Edward F. Shea,* District Judge.

Opinion by Judge Clifton

*The Honorable Edward F. Shea, United States District Judge for the
Eastern District of Washington, sitting by designation.

14267

## COUNSEL

Alan R. Herson (argued), Jacksonville, Oregon, for plaintiff-appellant Desert Outdoor Advertising, Inc.

Christopher Kee (argued), Deputy City Attorney, John Russo, City Attorney, Randolph W. Hall, Assistant City Attorney, James F. Hodgkins, Supervising Trial Attorney, Oakland, California, for defendant-appellee City of Oakland.

## OPINION

CLIFTON, Circuit Judge:

Desert Outdoor Advertising, Inc., wants to display three billboards, each of which would be primarily viewed from a freeway, in Oakland, California. The City of Oakland has refused to permit the signs, citing specific City ordinances. Desert filed this action to challenge those ordinances on First Amendment grounds, seeking injunctive relief and money damages. In particular, Desert argues that Oakland Municipal Code § 1501, which generally prohibits advertising signs designed to be seen from a freeway, favors commercial over noncommercial speech and imposes content-based restrictions on noncommercial speech. Desert also contends that Oakland Planning Code § 17.148.050(A), which limits advertising signs more generally, provides City officials with unbridled discretion to permit or deny the display of signs. Finally, Desert challenges the specific application of these ordinances to the signs it erected or attempted to erect.

The district court concluded that one provision of § 1501 was a content-based regulation of noncommercial speech in

violation of the First Amendment. It severed this provision and held that the remainder of that ordinance, as well as § 17.148.050(A), was constitutional. Desert appeals. We affirm.

## I.   Background

Desert challenges two separate provisions. The first ordinance is contained in the Oakland Municipal Code (OMC). The second ordinance is found in the Oakland Planning Code (OPC).

OMC § 15016[1] seeks to prohibit signs adjacent to freeways, several of which pass through the City. It provides that "[n]o sign shall be erected, constructed, relocated or maintained in the City of Oakland if such sign is designed to have or has the advertising thereon maintained primarily to be viewed from a freeway." There are certain specified exceptions to this ban: (a) signs limited to identifying the "name of the person, firm or corporation occupying the premises and the type of business conducted by such person, firm or corporation"; (b) signs limited to the "name of the product manufactured on the premises"; (c) signs "not exceeding six square feet in area [and] appertaining only to the lease, hire, sale, or display of the building premises"; and (d) "time and temperature units." In addition, the ordinance permits signs "in the M-40 Heavy Industrial Zone as part of a billboard relocation agreement authorized by the City," subject to limitations. This freeway sign ordinance does not permit variances.

Since 1997, OPC Chapter 17.104, § 17.104.010 et seq., has banned the construction of new "advertising signs" anywhere within the City.[2] Unlike the freeway sign ordinance described

---

[1]Section 1501 is also referred to as "chapter 15" and as section 14.04.270. As the parties generally refer to it as "section 1501," we will as well.

[2]OPC § 17.10.850 defines "advertising signs" as signs that (1) "direct [ ] attention to, or otherwise pertain[ ] to, a commodity, service, business,

above, however, the OPC provision allows for variances. Originally, OPC § 17.148.050(A) allowed City officials to grant a sign-related variance only if four conditions were met. First, strict compliance would have to "result in practical difficulty or unnecessary hardship inconsistent with the purposes of the zoning restrictions, due to unique physical or topographic circumstances or conditions of design." Second, strict compliance would have to "deprive the applicant of the privileges enjoyed by owners of similarly zoned property." Third, a variance could "not adversely affect the character, livability, or appropriate development of abutting properties or the surrounding area, and [could] not be detrimental to the public welfare." Fourth, a variance could "not constitute a grant of special privilege."³ As described below, this ordinance was amended while this lawsuit was pending to delete the third condition.

Desert erected or attempted to erect signs at three locations in Oakland. At two of the locations, the company erected freeway-visible signs with commercial advertising unrelated to the premises. At the third location, Desert applied for a variance to erect a 50-foot tall, 14- by 48-foot permanent structure displaying the messages "Volunteer to Be a Big Brother" and "Pray at First Baptist Church." This proposed sign would also be visible from a freeway.

The City concluded that Desert's freeway-visible commercial advertising violated OMC § 1501 and demanded the

─────────────────────

or profession which is not sold, produced, conducted, or offered by any activity on the same lot" or (2) "direct[ ] attention to, or otherwise pertain [ ] to, a commodity or service which is sold, produced, conducted, or offered by a Commercial, Manufacturing, or Agricultural or Extractive Activity on the same lot but which does not constitute a major function thereof . . . ."

³OPC § 17.148.050(A) also includes additional criteria for proposals involving "one or two dwelling units on a lot." These criteria are not relevant here.

removal of those signs. The City denied Desert's variance application for its noncommercial signs under OPC § 17.148.050(A), concluding that the proposed structure failed to meet any of the four conditions required to grant a variance.

Desert sued the City, challenging the OMC and the OPC sign regulations under the First Amendment. It argued that the ordinances lacked a sufficient statement of legislative purpose, imposed content-based restrictions on noncommercial speech, favored commercial speech over noncommercial speech, and created a variance procedure vesting City officials with unbridled discretion to permit or deny the display of signs. In addition, Desert argued that the ordinances were unconstitutional as applied to its signs. It sought declaratory and injunctive relief prohibiting the City from enforcing the ordinances and money damages under 42 U.S.C. § 1983.

The City filed a motion to dismiss Desert's complaint, which the district court denied. Both Desert and the City filed motions for summary judgment. After both parties had argued their motions before the district court, the City amended the variance procedure in OPC § 17.148.050(A) "to address the constitutional issues" and "to remove (moot) the issue." By an "emergency ordinance," the City deleted the prior § 17.148.050(A) requirement that a variance not "adversely affect the character, livability, or appropriate development of abutting properties or the surrounding area . . . [or] be detrimental to the public welfare." This was the only amendment made.[4]

---

[4]The other conditions remained in place, meaning that after this amendment, just as before, a variance could be granted only if (1) "strict compliance with the specified regulation would result in practical difficulty or unnecessary hardship inconsistent with the purposes of the zoning regulations," (2) strict compliance "would deprive the applicant of privileges enjoyed by owners of similarly zoned property," and (3) the variance would not "constitute a grant of special privilege."

After taking judicial notice of the amended § 17.148.050(A), the district court granted in part and denied in part both parties' motions. With regard to the claims on appeal, the district court held that OMC § 1501 did not favor commercial speech over noncommercial speech and granted the City's motion for summary judgment on this claim. The court held one provision of § 1501 unconstitutional — the exception for time and temperature displays — but severed that provision and left the remainder of § 1501 intact. The court ruled against Desert's challenge of the OPC § 17.148.050(A) variance procedure because the City's amendment eliminated any potentially impermissible criteria. Finally, the court denied Desert's as-applied challenges.

Both parties filed motions for reconsideration. The district court denied the motions, and Desert filed a timely notice of appeal.

## II.   Discussion

We review grants of summary judgment de novo. *ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790 (9th Cir. 2006). The relevant question is whether genuine issues of material fact exist when the evidence is viewed in the light most favorable to the nonmoving party.

### A.   OMC § 1501 (Signs visible from freeways)

#### 1.   The facial challenge

Sign ordinances are unconstitutional if they impose greater restrictions on noncommercial speech than on commercial speech or if they regulate noncommercial speech based on content. *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 516 (1981) (plurality); *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1081 (9th Cir. 2006). Desert contends that OMC § 1501 is unconstitutional on its face because it violates both of these limitations. The premise of Desert's

argument is that § 1501 applies to signs with noncommercial messages. The City disputes that premise, contending that § 1501 does not limit noncommercial speech at all. The district court agreed with the City's interpretation of the ordinance, and so do we.

To begin with, we note, as did the district court, that we are obligated to interpret a statute, if it is fairly possible, in a manner that renders it constitutionally valid. *See Office of Senator Mark Dayton v. Hanson,* ___ U.S. ___, 127 S.Ct. 2018, 2021 (2007); *The Ecology Center v. Castaneda*, 426 F.3d 1144, 1148 (9th Cir. 2005). The City's interpretation of § 1501 is plausible.

**[1]** Section 1501 provides that "[n]o sign shall be erected, constructed, relocated or maintained in the City of Oakland if such sign is designed to have or has the *advertising* thereon maintained primarily to be viewed from a freeway." (Emphasis added). Thus, § 1501 bans only signs bearing freeway-visible "advertising."

**[2]** Though the OMC does not define the term "advertising" by itself, it does define "advertising sign" in OMC § 202: "any sign, poster, placard, device, graphic display, or any other form of advertising promoting the sale of a commodity which is not sold, produced, conducted, or offered by any activity on the same lot." Speech "promoting the sale of a commodity" is commercial speech. *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983). The definition of "advertising sign" does not appear to cover noncommercial speech at all.

It is appropriate for the City to apply the same interpretation — that the reference to "advertising" does not encompass noncommercial speech — to that word as it is used in § 1501. *See Freeman v. Gonzales*, 444 F.3d 1031, 1039 (9th Cir. 2006) (holding that we "should interpret statutes to be coherent and internally consistent").

The notion that "advertising" as used in the OMC refers only to commercial speech is supported by the City's implementation and interpretation of § 1501. *See Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123, 131 (1992) ("In evaluating respondent's facial challenge, we must consider the county's authoritative constructions of the ordinance, including its own implementation and interpretation of it."). Evidence provided by the City indicates that it "does not construe, nor has it . . . ever construed 'advertising' as set forth in the OMC, to apply to noncommercial speech."

[3] Desert argues that § 1501 prevents a variety of noncommercial messages, including "Pray on Sunday for Your Soul," "Give to Our Blood Drive Here on Tuesday," "Register to Vote Here" or "Elect Jane Doe." This argument regarding hypothetical signs is not supported by the record, however. The City did not in fact apply § 1501 to turn down Desert's application to erect freeway-visible signs bearing the noncommercial messages "Volunteer to Be a Big Brother" and "Pray at First Baptist Church." The City applied only the OPC regulations, denying Desert's application without any reference to § 1501. The OPC provides that an OPC variance application "cannot be processed until any issues relating to the OMC have been resolved." Thus, if § 1501 regulated noncommercial speech, the City would presumably have applied that ordinance before reviewing Desert's OPC variance application. It did not.

Desert also argues that § 1501 contains exceptions for some noncommercial speech, which would be unnecessary if § 1501 did not regulate noncommercial speech in the first instance. A similar argument was made by the plaintiff in *National Advertising Co. v. City of Orange*, 861 F.2d 246 (9th Cir. 1988). In that case, a municipality's billboard ordinance was challenged on the ground that the ordinance, while allegedly aimed only at commercial speech, allowed content-based exceptions for some noncommercial speech. *Id.* at 246. The contested ordinance banned all "general or billboard advertis-

ing signs" in the city but exempted "governmental signs and flags, memorial tablets, recreational signs, and temporary political, real estate, construction, and advertising signs." *Id.* While the city argued that the ordinance's prohibition was limited to commercial speech, we held that the ban's many noncommercial exceptions "would be rendered meaningless by the City's interpretation." *Id.* at 247.

Desert argues that § 1501 is analogous to the unconstitutional ordinance in *National Advertising* in light of its allegedly noncommercial exceptions. But § 1501 does not contain any exceptions resembling the *National Advertising* exceptions for obviously noncommercial signs, like governmental signs and flags or memorial tablets. The only arguably content-based exceptions to § 1501 are those allowing the "name of the person, firm or corporation occupying the premises and the type of business conducted by such person, firm or corporation"; the "name of the product manufactured on the premises"; signs of a certain size that "appertain[ ] only to the lease, hire, sale, or display of the building or premises"; and "time and temperature units."[5] Placing the exception for "time and temperature units" aside for the moment, none of the other exceptions compels a finding that the use of "advertising" in § 1501 covers noncommercial speech. All of them could apply to signs that are commercial in nature, so these exceptions do not "render meaningless" the City's position that § 1501 only applies to commercial speech. *Id.* at 247.

**[4]** The severed exception for time and temperature displays is somewhat different, since time and temperature information is not itself "advertising" and is inherently

---

[5]While the district court severed the § 1501 exception for time and temperature displays, a decision which the City of Oakland does not challenge, we consider it here in order to construe the proper reach of § 1501. Section 1501 also exempts signs located "in the M-40 Heavy Industrial Zone as part of a billboard relocation agreement authorized by the City," but this exception is based on a sign's location rather than its content.

noncommercial. We do not conclude, however, that by providing an exception for time and temperature units, the City of Oakland necessarily expressed an intent that the ordinance should apply to noncommercial speech or contradicted its interpretation of the ordinance as applying only to commercial advertising. Time and temperature displays are commonly used to attract attention to commercial messages contained on the same sign. Often, time and temperature information is included on signs displaying the name of the business located at the location of the sign, such as a bank. That display of the name of the commercial business could fall within the "on-site" exception under § 1501. The City may have provided an exception for time and temperature units in § 1501 simply to make clear that it was permissible to include time and temperature displays as part of on-site commercial signs. Though it could be argued that the exception for time and temperature was unnecessary if the ordinance only applies to commercial speech, the redundancy was both understandable and insignificant. The time and temperature exception is not enough to demonstrate that the City intended § 1501 to apply to noncommercial speech.

**[5]** Because § 1501 can be fairly read to regulate only commercial speech, and because it can function effectively if so limited, we conclude that the ordinance does not impose any content-based restrictions on noncommercial speech. This forecloses Desert's claim that § 1501 impermissibly favors commercial over noncommercial speech and regulates noncommercial speech based upon content.

2.    Severance of § 1501's time and temperature exception

The district court severed § 1501's exception for time and temperature displays after holding that it imposed an unconstitutional, content-based restriction on noncommercial speech by favoring one form of noncommercial speech, time and temperature, over other forms of noncommercial speech.

The City does not appeal that decision.[6] Desert contends this severance was an improper solution to the identified problem with the time and temperature exception, because severing the provision resulted in more speech being restricted than if the time and temperature exception remained in place.

**[6]** Desert's argument relies on *Rappa v. New Castle County*, 18 F.3d 1043 (3d Cir. 1994). In *Rappa*, the Third Circuit refused to sever an unconstitutional exception to a sign ordinance when doing so would subject more speech to regulation than was formerly permissible under the statute. *Id.* at 1072-73 ("Eliminating the offending exception would mean that we would be requiring the State to restrict more speech than it currently does."). We do not need to decide whether we would adopt the holding of *Rappa*, because the situations are not the same. Severing the exception for time and temperature displays did not cause § 1501 to restrict more speech. Since noncommercial speech is not covered under § 1501 at all, eliminating the exception had no actual impact on the legality of time and temperature displays under that ordinance.

3.   Desert's "as-applied" challenge

"An as-applied challenge contends that [a] law is unconstitutional as applied to [a] litigant's particular speech activity, even though the law may be capable of valid application to others." *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998). Desert purports to raise an as-applied challenge to OMC § 1501, but it misunderstands the nature of such challenges. As-applied challenges are not based solely on the application of an allegedly unconstitutional law to a particular litigant. Rather, they "separately argue that *discriminatory enforcement* of a speech restriction amounts to viewpoint dis-

---

[6]As a result, we do not rule on the constitutionality of the time and temperature provision or on whether the severance of that provision was necessary.

crimination in violation of the First Amendment." *Id.* (emphasis added). It is for this reason that a "successful as-applied challenge does not render the law itself invalid but only the particular application of the law." *Id.* An as-applied challenge goes to the nature of the application rather than the nature of the law itself.

Desert does not argue that the City's refusal to let it maintain its freeway-visible commercial advertising resulted from discriminatory enforcement.[7] Nor could it. OMC § 1501 provides a flat ban on such advertising and does not allow for variances. City officials thus had no discretion when applying § 1501 to Desert's signs, and Desert cannot show that the City's "particular application of the law" evidenced any degree of subjectivity or undue discretion. *Foti*, 146 F.3d at 635. We thus reject Desert's purported as-applied challenge of § 1501 and affirm the finding of the district court with regard to that challenge.

### B.    OPC § 17.148.050(A) (Restrictions on advertising signs generally)

#### 1.    The amended ordinance

As described above, while this case was before the district court, the City amended the variance procedure "to address the constitutional issues" and "to remove (moot) the issue."

---

[7]In its reply brief, Desert argues for the first time, in a highly unspecific fashion, that the City "did not apply its invalid regulations in an objective manner" and that "numerous unconstitutional standards were applied to [Desert's] application." Ordinarily, we will not "consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief." *Koerner v. Grigas*, 328 F.3d 1039, 1048-49 (9th Cir. 2003) (citation omitted). Even if we wished to consider this argument, Desert fails to explain which standards it considers unconstitutional or how the City applied its regulations in an unobjective manner. Consequently, it has not raised the issue adequately. *See Washington v. Daley*, 173 F.3d 1158, 1169 n.15 (9th Cir. 1999).

The City later extended the duration of the amendment "until 90 days after a final decision from the Court of Appeals, when the City Council will adopt permanent amendments to the Planning Code and/or Municipal Code regarding the subject matter of this ordinance for codification." The amendment eliminated one of the four conditions required before a variance could be issued. After that deletion, OPC § 17.148.050(A) provides that a variance for the new construction of advertising signs may be granted only when (1) strict compliance "would result in practical difficulty or unnecessary hardship inconsistent with the purposes of the zoning restrictions, due to unique physical or topographic circumstances or conditions of design"; (2) strict compliance "would deprive the applicant of privileges enjoyed by owners of similarly zoned property"; and (3) a variance would "not constitute a grant of special privilege."

[7] Desert argues that, even as amended, OPC § 17.148.050(A) continues to violate the First Amendment by granting City officials undue discretion to permit or deny variances.[8] "[A] law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." *Arkansas Educ. Television Com'n v. Forbes*, 523 U.S. 666, 684 (1998) (quoting *Shuttlesworth v. Birmingham*, 394 U.S. 147, 150-151(1969)). The requirement of sufficient direction for City officials "seeks to alleviate the threat of content-based, discriminatory enforcement that arises '[w]here the licensing official enjoys unduly broad discretion in determining whether to grant or deny a permit . . . .' " *G.K. Ltd. Travel*, 436 F.3d at 1082 (internal citation omitted). For this reason, a permit requirement "cannot condition the free exercise of First Amendment rights on the 'unbridled

---

[8]Desert also appears to challenge the constitutionality of OPC conditional use permit requirements and design review procedures. We do not address this claim because Desert prevailed on it below, and the City does not appeal.

discretion' of government officials." *Desert Outdoor Advertising, Inc. v. City of Moreno Valley*, 103 F.3d 814, 818 (9th Cir. 1996) (internal citations omitted).

In *Moreno Valley*, we invalidated a sign ordinance providing for permits subject to a finding that a structure or sign would "not have a harmful effect upon the health or welfare of the general public" and would not be "detrimental to the welfare of the general public . . . [or] to the aesthetic quality of the community or the surrounding land uses." 103 F.3d at 818. We found that this abstract scheme placed "no limits on the authority of [c]ity officials to deny a permit" and allowed the city to deny permit applications without offering any evidence in support of its denial. *Id.* at 819. Because city officials had "unbridled discretion" to determine whether a particular sign would "be harmful to the community's health, welfare, or 'aesthetic quality,' " the sign ordinance did not comport with the First Amendment. *Id.*

Subsequently, in *G.K. Limited Travel*, we upheld a sign code requiring permits for sign display and authorizing city officials to review signs for "compatib[ility] with the surrounding environment." 436 F.3d at 1082-83. The plaintiff alleged that this "compatibility" review placed insufficient limits on the discretion of permitting officials, but our court disagreed. *Id.* We upheld the permit requirements on three grounds. First, "surrounding environment" and "compatibility" were explicitly defined in the relevant code by "a limited and objective set of criteria."[9] *Id.* at 1083. The code also required that most applications be processed within 14 days of receipt, instructed applicants what to include in an applica-

---

[9]In determining whether a sign was "compatible" under the challenged code, for example, the code instructed "permitting officials to consider a limited and objective set of criteria, namely 'form, proportion, scale, color, materials, surface treatment, overall sign size and the size and style of lettering.' " *G.K. Ltd. Travel*, 436 F.3d at 1083. The "surrounding environment" included "other nearby signs, other elements of street and site furniture and with adjacent structures." *Id.*

tion, and allowed for appeal. *Id.* Finally, a permitting official was required to "state the reasons for his or her decision to either grant or deny a permit so as to facilitate effective review of the official's determination." *Id.* These criteria were sufficiently specific and objective to survive a First Amendment challenge.

The amended OPC variance procedure falls somewhere between the abstract standards invalidated in *Moreno Valley* and the more explicit criteria and procedural requirements upheld in *G.K. Limited Travel*. Compared to the ordinance challenged in *Moreno Valley*, § 17.148.050(A) does provide "limits on the authority of City officials to deny a permit." *Moreno Valley*, 103 F.3d at 818. At issue in *Moreno Valley* were abstract appeals to "health, welfare, or 'aesthetic quality,' " all of which required broadly subjective determinations. *Id.* at 819. The three variance prerequisites contained in the amended version of OPC § 17.148.050(A) are significantly more concrete and allow far less subjectivity.

**[8]** Whether denial of a variance "would deprive the applicant of privileges enjoyed by owners of similarly zoned property" depends on objective comparisons to similarly situated properties. Whether a variance constitutes a "grant of special privilege" likewise turns on an objective inquiry: whether the variance allows the applicant to engage in conduct otherwise forbidden by the City. Questions of "practical difficulty" and "unnecessary hardship" are less concrete, but § 17.148.050(A) defines these criteria specifically in terms of "unique physical or topographic circumstances or conditions of design." This limitation is "reasonably specific," *G.K. Ltd. Travel*, 436 F.3d at 1083, and sufficiently constrains "the authority of City officials to deny a permit." *Moreno Valley*, 103 F.3d at 818.

**[9]** Section 17.148.050(A) provides less explicit guidance overall than the ordinance upheld in *G.K. Ltd. Travel*. Even so, its criteria are significantly more concrete than the abstract "aesthetic" standards invalidated in *Moreno Valley*. The pro-

visions of § 17.148.050(A) are "somewhat elastic" and require "reasonable discretion to be exercised by the permitting authority," but this "does not make [the ordinance] an unconstitutional prior restraint." *Id.* Satisfied that § 17.148.050(A) "contains appropriate standards cabining the [City's] discretion," *id.*, we agree with the district court that the ordinance is constitutional as amended.

## 2.  OPC § 17.148.050(A) as originally adopted

We next consider the original version of OPC § 17.148.050(A), as applied by the City when it rejected Desert's variance application. That version contained the three conditions retained in the amended version, while also providing that City officials could not grant a variance if doing so would "adversely affect the character, livability, or appropriate development of abutting properties or the surrounding area . . . [or] be detrimental to the public welfare." Desert argues that this original version of § 17.148.050(A) is unconstitutional on its face and as applied to Desert's variance application.

**[10]** Desert's facial challenge to the original version of the ordinance is moot.[10] While the current version of OPC § 17.148.050(A) is set to expire 60 days after our decision in this case, there is no indication that the City intends to re-adopt the provision it deleted voluntarily from the ordinance, and Desert makes no argument that it will. *Compare Dream Palace v. County of Maricopa*, 384 F.3d 990, 999, 1001 (9th Cir. 2004) (holding that the plaintiff, though not covered by the challenged ordinance, still had a "live controversy" given the defendant's "expressed intention to amend the provision" to cover the plaintiff).

---

[10]Although a claim for damages already incurred from application of the original version of the ordinance might not be moot, Desert has not made that argument on appeal or sought remand to the district court for that purpose, so we need not consider that possibility.

Desert does argue that the City violated the First Amendment by applying the original version of § 17.148.050(A) to its request for a variance. As we have already discussed, this is not truly an as-applied challenge. Desert does not argue that the City's denial of its variance application resulted from some particular exercise of undue discretion. It argues only that the City violated the First Amendment by denying its application under an unconstitutional ordinance. This argument is unsuccessful because the City denied Desert's application on three constitutionally permissible, individually sufficient, bases.

**[11]** Under the original version of § 17.148.050(A), the City was required to deny Desert's variance application unless it met four independent requirements. The City determined that Desert's application failed on all four. We have already concluded that three of the conditions were constitutionally permissible. This means the City denied Desert's application based on three constitutionally permissible grounds, each of which was sufficient to preclude issuance of a variance. Desert does not have a viable claim that it was injured by the City's denial of Desert's request for a variance.

## III.   Conclusion

We conclude that the two sign ordinances challenged by Desert, OMC § 1501 and OPC § 17.148.050(A), the latter in its current form, are both constitutional, facially and as applied to Desert. Desert is not entitled to relief beyond that already granted by the district court.

**AFFIRMED.**