WATFORD, Circuit Judge,
dissenting:
I agree with the majority that the post-judgment amendments to the Town of Gil *1078 bert’s sign ordinance do not render this appeal moot. But I disagree with the majority’s conclusion that the sign ordinance is constitutional.
When this case first came before us, we evaluated § 4.402(P) of Gilbert’s sign ordinance in isolation. See Reed v. Town of Gilbert, 587 F.3d 966, 976-79 (9th Cir.2009) (Reed I). That provision specifies the restrictions applicable to “temporary directional signs relating to a qualifying event,” such as the signs plaintiff Good News Community Church seeks to display inviting people to attend its Sunday morning services.[1] We held that, with respect to the temporary directional signs it covers, § 4.402(P) is content-neutral. Id. at 979. We reached that conclusion because, considered on its own, § 4.402(P) “does not single out certain content for differential treatment, and in enforcing the provision an officer must merely note the content-neutral elements of who is speaking through the sign and whether an event is occurring.” Id.
Wdiat we did not decide in Reed I is whether § 4.402(P) is impermissibly content-based when viewed in relation to the other provisions of Gilbert’s sign ordinance. In particular, we noted that the district court had not addressed plaintiffs’ argument that “the ordinance unfairly discriminates among forms of noncommercial speech,” id. at 971, by granting more favorable treatment to signs that Gilbert categorizes as “political” and “ideological.” Id. at 983. We therefore remanded the case for resolution of plaintiffs’ “First Amendment and Equal Protection claims that the Sign Code is unconstitutional in favoring some noncommercial speech over other noncommercial speech.” Id.
The Fourteenth Amendment’s Equal Protection Clause and the First Amendment’s Free Speech Clause prohibit the government from favoring certain categories of non-commercial speech over others based solely on the content of the message being conveyed. See Carey v. Brown, 447 U.S. 455, 459-61, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980); Police Dep’t of Chicago v. Mosley, 408 U.S. 92, 96, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). When regulating speech in a public forum, the government may draw distinctions among different categories of non-commercial speech only if those distinctions are justified by some non-communicative aspect of the speech involved. See Carey, 447 U.S. at 465, 100 S.Ct. 2286; Mosley, 408 U.S. at 100, 92 S.Ct. 2286. For- example, a State may not exempt labor picketing from a general ban on picketing in front of homes (enacted to protect residential privacy), unless it can show that labor picketing is inherently less disruptive of residential privacy than picketing on other subjects. Carey, 447 U.S. at 465, 100 S.Ct. 2286. The reason is simple: Within the realm of noncommercial speech, the government may not decide that speech on certain subjects is more (or less) valuable — and therefore more (or less) deserving of First Amendment protection — -than speech on other subjects. Id. at 466, 100 S.Ct. 2286; see Mosley, 408 U.S. at 96, 92 S.Ct. 2286.
The Supreme Court relied on this general principle to strike down a municipal sign ordinance in Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981). A plurality of the Court invalidated San Diego’s ordinance banning most non-commercial billboards on the ground that the ordinance imper- *1079 missibly granted exemptions for billboards bearing non-commercial speech on favored subjects, such as political campaign messages. Id. at 514, 101 S.Ct. 2882 (plurality opinion). The plurality held that, although cities “may distinguish between the relative value of different categories of commercial speech,” they do not have the same freedom in the realm of non-commercial speech “to evaluate the strength of, or distinguish between, various communicative interests.” Id. (citing Carey, 447 U.S. at 462, 100 S.Ct. 2286; Mosley, 408 U.S. at 96, 92 S.Ct. 2286). San Diego could not identify any non-communicative aspect of the speech at issue to justify the distinctions it had drawn. It failed to show, for example, that the non-commercial billboards it banned had any greater effect on the city’s asserted interests in promoting traffic safety and aesthetics than the noncommercial billboards it permitted. See id. at 513, 101 S.Ct. 2882; see also Desert Outdoor Adver., Inc. v. City of Moreno Valley, 103 F.3d 814, 820 (9th Cir.1996) (applying Metromedia plurality’s holding); Nat’l Adver. Co. v. City of Orange, 861 F.2d 246, 248-49 (9th Cir.1988) (same).
Contrary to the majority’s suggestion, Hill v. Colorado, 530 U.S. 703, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000), did not modify or refine the core principle underlying Mosley, Carey, and Metromedia. The statute at issue in Hill prohibited, within certain designated areas, approaching within eight feet of another for the purpose of engaging in oral protest, education, or counseling. Id. at 707, 120 S.Ct. 2480. The Court held that the statute was content-neutral because it regulated a particular mode of communication — approaching within eight feet of another to engage in oral protest, education, or counseling— without regard to the subject of the speaker’s message. Id. at 720-24, 120 S.Ct. 2480. As the Court stressed, “Instead of drawing distinctions based on the subject that the approaching speaker may wish to address, the statute applies equally to used car salesmen, animal rights activists, fundraisers, environmentalists, and missionaries.” Id. at 723, 120 S.Ct. 2480. (As explained below, the ordinance at issue in this case does draw distinctions based on the subject the speaker wishes to address.) Thus, rather than distinguishing among different categories of non-commercial speech based on the message being conveyed, the Colorado statute prohibited all non-commercial speech expressed through a particular mode of communication — a fact that rendered Carey “easily distinguishable.” Id.
Gilbert’s sign ordinance violates the First and Fourteenth Amendments by drawing content-based distinctions among different categories of non-commercial speech. The most glaring illustration is the ordinance’s favorable treatment of “political” and “ideological” signs relative to the treatment accorded the non-commercial signs plaintiffs seek to display. Under the ordinance, plaintiffs’ temporary directional signs may not exceed six square feet in size and may not be displayed more than 12 hours before or one hour after the relevant event — here, Sunday morning church services. (Given the 9:00 a.m. start time of Good News’s church services, this durational restriction limits the display of plaintiffs’ signs to periods when it is virtually always dark.) In contrast, “political” signs — defined' as “[a] temporary sign which supports candidates for office or urges action on any other matter on the ballot of primary, general and special elections relating to any national, state or local election” — may be up to 32 square feet in size and may be displayed any time prior to an election and removed within 10 days after the election. “Ideological” signs— defined as “a sign communicating a message or ideas for non-commercial purposes” that is not a construction, directional, political, or garage sale sign — may be *1080 up to 20 square feet in size and are not subject to any durational limits at all.[2]
Gilbert’s sign ordinance plainly favors certain categories of non-commercial speech (political and ideological signs) over others (signs promoting events sponsored by non-profit organizations) based solely on the content of the message being conveyed. These are not content-neutral “speaker” and “event” based distinctions, like those we approved in G.K. Ltd. Travel v. City of Lake Oswego, 436 F.3d 1064, 1076-78 (9th Cir.2006), and in Reed I, 587 F.3d at 977-78, when we reviewed § 4.402(P) standing alone. Determining whether a particular sign will be regulated as a “political” sign as opposed to an “ideological” sign or a “temporary directional sign relating to a qualifying event” turns entirely on the content of the message displayed on the sign. Cf. G.K Ltd., 436 F.3d at 1078 (speaker and event based distinctions were content-neutral because they applied “without regard for the actual substance of the message” and “regardless of content”).
The content-based distinctions Gilbert has drawn are impermissible unless it can identify some non-communicative aspect of the signs at issue to justify this differential treatment. See Metromedia, 453 U.S. at 513, 101 S.Ct. 2882; Carey, 447 U.S. at 465, 100 S.Ct. 2286; Mosley, 408 U.S. at 100, 92 S.Ct. 2286. Gilbert has merely offered, as support for the sign ordinance as a whole, its interest in enhancing traffic safety and aesthetics. Traffic safety and aesthetics are certainly important interests. But to sustain the distinctions it has drawn, Gilbert must explain why (for example) a 20-square-foot sign displayed indefinitely at a particular location poses an acceptable threat to traffic safety and aesthetics if it bears an ideological message, but would pose an unacceptable threat if the sign’s message instead invited people to attend Sunday church services.
Gilbert has not offered any such explanation, and I doubt it could come up with one if it tried. What we are left with, then, is Gilbert’s apparent determination that “ideological” and “political” speech is categorically more valuable, and therefore entitled to greater protection from regulation, than speech promoting events sponsored by non-profit organizations. That is precisely the value judgment that the First and Fourteenth Amendments forbid Gilbert to make. See Metromedia, 453 U.S. at 514, 101 S.Ct. 2882; Carey, 447 U.S. at 466, 100 S.Ct. 2286; Mosley, 408 U.S. at 96, 92 S.Ct. 2286.
Nothing we said in Reed I is inconsistent with this conclusion. There we held only that § 4.402(P), viewed in isolation, is a valid content-neutral time, place, and manner regulation. Reed I, 587 F.3d at 979-82. We did not decide, and instead remanded for the district court to decide, whether Gilbert’s sign ordinance draws content-based distinctions by “favoring some noncommercial speech over other noncommercial speech.” Id. at 983. In doing so, we mentioned as potentially relevant National Advertising Co. v. City of Orange, 861 F.2d 246 (9th Cir.1988), where (we noted in Reed I) we invalidated a municipal sign ordinance that “made content-based distinctions among categories of noncommercial speech.” Reed I, 587 F.3d at 982. Thus, when we said in Reed I that *1081 § Jp.Jp02(P) “does not single out certain content for differential treatment,” id. at 979, we obviously did not decide whether the sign ordinance as a whole singles out certain content for differential treatment. Otherwise, our remand to the district court would have been entirely unnecessary.
For the reasons given above, I would hold that the regulatory distinctions Gilbert has drawn among different categories of non-commercial speech are unconstitutional, and I would remand for the district court to determine whether those provisions of Gilbert’s sign ordinance are sever-able. I respectfully dissent from the majority’s contrary holding.

. "Temporary directional signs relating to a qualifying event” are defined as signs "intended to direct pedestrians, motorists, and other passersby to a 'qualifying event.’ A 'qualifying event' is any assembly, gathering, activity, or meeting sponsored, arranged, or promoted by a religious, charitable, community service, educational, or other similar non-profit organization.”

. Until recently, Gilbert’s sign ordinance contained an even more blatantly discriminatory distinction: Political and ideological signs could be displayed in the public right of way but “temporary directional signs relating to a qualifying event” could not. After the parties filed their briefs in this court, Gilbert removed this restriction but replaced it with an equally suspect one. Under the amended ordinance, “temporary directional signs relating to a qualifying event” may not be displayed anywhere in Gilbert unless the "qualifying event” takes place within the town's borders.