**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JAMES REAL,

*Plaintiff-Appellant*,

v.

CITY OF LONG BEACH, a California Municipal Corporation,

*Defendant-Appellee.*

No.15-56158

D.C. No.
2:13-cv-01631-R-MAN

OPINION

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted February 14, 2017
Pasadena, California

Filed March 29, 2017

Before:  MILAN D. SMITH, JR. and JOHN B. OWENS, Circuit Judges, and ALVIN K. HELLERSTEIN,[*] District Judge.

Opinion by Judge Milan D. Smith, Jr.

---

[*] The Honorable Alvin K. Hellerstein, United States Senior District Judge for the Southern District of New York, sitting by designation.

SUMMARY[**]

**Civil Rights**

The panel reversed the district court's judgment in favor of the City of Long Beach in an action brought pursuant to 42 U.S.C. § 1983 alleging that the City's zoning ordinances violate the First Amendment by unreasonably restricting plaintiff's ability to open and operate a tattoo shop in Long Beach.

The panel held that plaintiff had standing to bring a facial First Amendment challenge to the zoning ordinances and that he was not required to apply for, and then be denied, a conditional use permit under a permitting system that allegedly gave City officials unfettered discretion over an expressive activity fully protected activity by the First Amendment. The panel also held that plaintiff had standing to bring an as-applied First Amendment challenge because it appeared likely that the City would take action against plaintiff if he opened a tattoo shop without a conditional use permit.

The panel held that plaintiff raised a cognizable claim that the City's zoning ordinances constituted an unlawful prior restraint on speech. The panel held that the Long Beach Code supported plaintiff's allegations that the ordinances vested excessive permitting discretion with the City to issue or deny a conditional use permit, and did not contain adequate procedural safeguards. The panel further

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

held that plaintiff raised a cognizable claim that the City's zoning ordinances constituted an unlawful time, place, or manner restriction on speech. The panel remanded for the district court to try the City's defense that the ordinances were reasonable time, place, and manner restrictions and not unlawful prior restraints on speech.

## COUNSEL

Robert C. Moest (argued), Law Offices of Robert C. Moest, Santa Monica, California, for Plaintiff-Appellant.

Monte H. Machit (argued), Assistant City Attorney; Charles Parkin, City Attorney; Office of the City Attorney, Long Beach, California; for Defendant-Appellee.

## OPINION

M. SMITH, Circuit Judge:

James Real brought this civil rights action against the City of Long Beach (City), alleging that the City's zoning ordinances violate the First Amendment by unreasonably restricting his ability to open and operate a tattoo shop in Long Beach. The district court held that Real did not have standing to bring his claims because he did not apply for a conditional use permit (CUP), which is required to operate a tattoo shop in Long Beach. On appeal, Real argues that he has standing to bring both facial and as-applied challenges to the City's relevant zoning ordinances, and that the ordinances operate as both unlawful prior restraints on speech and unreasonable time, place, or manner restrictions on speech. We hold that Real has standing to bring both

facial and as-applied First Amendment challenges against the City, and remand for the district court to try the City's defense that the ordinances are reasonable time, place, and manner restrictions and not unlawful prior restraints on speech.

## FACTS AND PRIOR PROCEEDINGS

Real is a tattoo artist and long-time resident of Long Beach. He owns a tattoo shop in Huntington Beach, California, but has desired to open a shop in Long Beach for over a decade. However, he has not opened a shop or applied for a CUP due to Long Beach's restrictive zoning ordinances, which disallow tattoo shops in most of Long Beach and require a CUP to operate. Long Beach Code § 21.32.110, Table 32-1. Additionally, a tattoo shop may not operate within 1,000 feet "of any existing adult entertainment, arcade, fortunetelling, tattoo parlor, or tavern," and may only operate between 7 a.m. and 10 p.m. *Id.* § 21.52.273. Before issuing a CUP, the City must conclude, among other things, that "[t]he proposed use will not be detrimental to the surrounding community including public health, safety or general welfare, environmental quality or quality of life." *Id.* § 21.25.206. Generally, only a property owner in an area zoned for tattooing may apply for a CUP; if the affected property is not in such an area, the property owner must submit a separate application for a variance. *Id.* § 21.25.203.

On August 1, 2011, Real's attorney sent a letter to the City identifying three locations where Real desired to open a tattoo shop, and had obtained preliminary approval from landlords, but was unable to move forward because the locations were not zoned for tattooing. Real's attorney argued that the zoning ordinances were invalid because (1) City officials have excessive discretion to issue or deny

a CUP, and (2) the areas in which tattoo shops may be located are unreasonably restricted. The City responded on August 8, 2011, stating that a number of properly permitted tattoo shops operate in Long Beach, and the City was considering expanding zoning for tattooing, possibly to the East Village Arts District, where Real was interested in operating.[1]

Real brought this action against the City, arguing that the City's zoning ordinances unduly restricted his First Amendment right to engage in tattooing by (1) limiting the areas in which tattooing is permitted, including by requiring that there be at least 1,000 feet between tattoo shops and taverns or other tattoo shops, and (2) requiring permitting through a CUP process that vests excessive discretion in city officials and imposes excessive fees. The district court held a one-day bench trial where Real testified that if the CUP process were not in place, he would have the means to, and indeed would, pursue opening a shop in Long Beach. He

---

[1] At some point after August 1, 2011, the City opened the East Village Arts District to CUP applications for tattoo shops, and at least one tattoo shop opened there. Real never applied for a CUP to open a shop in the East Village Arts District, although one of the three locations he identified in his 2011 letter to the City was in that area. At trial, he testified that he was no longer interested in operating there, at least in part because a prominent tattoo shop had already opened there, and he was concerned about professional courtesy. Contrary to the City's arguments and the district court's holding, the City's decision to expand tattooing to the East Village Arts District and Real's failure to apply for a CUP to operate there do not defeat his claims. The East Village Arts District was only one location that Real was considering, and he changed his mind due to subsequent events. Moreover, the City's zoning expansion does not undermine Real's claims that the CUP process vests unbridled discretion in the City, that most of Long Beach is not zoned for tattooing, and that the location proximity requirements are unduly restrictive.

testified that he never applied for a CUP because the areas in which he was interested in opening a shop (particularly an area named Retro Row) were not zoned for tattooing, so he knew the application would be denied.  Further, to obtain a CUP he would first have to rent a location, then pay a large, nonrefundable application fee, and then wait while the permit was reviewed, with no guarantee that it would be approved.  Moreover, he was aware that there were bars centrally located in Retro Row, and so the 1,000 foot restriction would likely be prohibitive, even if the area were zoned for tattooing.

After cross-examining Real, and before presenting any evidence, the City made an oral Federal Rule of Civil Procedure 52(c) motion, claiming that Real had not met his burden.  The court agreed, and entered judgment for the City, concluding that (1) the zoning ordinances constituted time, place, or manner regulations, not prior restraints, because they did not entirely forbid tattooing; (2) Real brought an as-applied challenge, rather than a facial challenge, because he did not present evidence of impact on third parties; and (3) Real did not have standing to bring his as-applied challenge because he did not apply for a CUP, and thus suffered no injury-in-fact.  Real timely appealed.

## STANDARD OF REVIEW

We review the district court's Article III standing decision de novo.  *Braunstein v. Ariz. Dep't of Transp.*, 683 F.3d 1177, 1184 (9th Cir. 2012).  We also review the district court's determination that the City's zoning ordinances do not constitute a prior restraint on speech de novo, including any underlying factual findings.  *Tucker v. State of Cal. Dep't of Educ.*, 97 F.3d 1204, 1209 n.2 (9th Cir. 1996).

## ANALYSIS

The district court inaccurately narrowed Real's claims in its order granting judgment in favor of the City by (1) framing Real's challenge as only to the CUP requirement, when Real also challenged the location restrictions on tattoo shops; (2) ignoring Real's claim that the CUP process vests unbridled discretion in the City; and (3) stating that Real's claim only concerned his desire to open a shop at 316 Elm Street in the East Village Arts District, when this was just one of three locations that Real initially identified in his letter to the City. By overlooking these aspects of Real's claims, the district court incorrectly concluded that Real lacked standing and did not raise a prior restraint claim.

## I. Real Has Standing to Bring a Facial First Amendment Challenge to the City's Zoning Ordinances

The district court held that Real "plainly did not assert a facial challenge to the zoning ordinances" because Real presented "no evidence regarding any third party's conduct or effect of the zoning ordinances on third parties." However, there is no requirement that a plaintiff present evidence of harm to third parties in order to bring a facial challenge pursuant to the First Amendment. Rather, a plaintiff has standing to vindicate his First Amendment rights through a facial challenge when he "argue[s] that an ordinance . . . impermissibly restricts a protected activity," and such facial challenges may be paired with as-applied challenges. *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1033–34 (9th Cir. 2006).

As the Court explained in *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 755–56 (1988), "when

a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." This is because "without standards to fetter the licensor's discretion, the difficulties of proof and the case-by-case nature of 'as applied' challenges render the licensor's action in large measure effectively unreviewable." *Id.* at 758–59.

We have held that tattooing is "purely expressive activity fully protected by the First Amendment." *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1060 (9th Cir. 2010). This includes "[t]he tattoo *itself*, the *process* of tattooing, and even the *business* of tattooing." *Id.* Although Real did not clearly state to the district court whether his challenge was as-applied or facial, he plainly challenged the zoning ordinances on the grounds that they impermissibly restrict an activity protected by the First Amendment and vest excessive permitting discretion in the City. Thus, Real has standing to bring a facial challenge to the zoning ordinances. *See Santa Monica Food Not Bombs*, 450 F.3d at 1033. He was not required to first apply for, and then be denied, a CUP to bring this claim under a permitting system that allegedly gives City officials unfettered discretion over protected activity. *See City of Lakewood*, 486 U.S. at 755–56.

## II. Real Has Standing to Bring an As-Applied First Amendment Challenge to the City's Zoning Ordinances

To establish Article III standing to challenge a law as applied to him, a plaintiff "must allege (1) a distinct and palpable injury-in-fact that is (2) fairly traceable to the challenged provision or interpretation and (3) would likely be redressed by a favorable decision." *Santa Monica Food*

*Not Bombs*, 450 F.3d at 1033 (internal quotation marks and ellipsis omitted).**[2]**

The district court held that Real lacked standing to bring an as-applied challenge because he did not adequately allege an injury-in-fact.  According to the district court, to suffer an injury in this case Real would have to apply for and be denied a CUP to operate at 316 Elm Street in the East Village Arts District, a location that Real identified in his 2011 letter to the City.  The district court limited the claim to that location, even though it was only one of three locations that Real identified in 2011, and at trial in 2015 Real explained that subsequent events had made it an undesirable location, and he was looking to operate elsewhere in Long Beach.  Moreover, Real was not required to apply for a CUP to operate *anywhere* in Long Beach to suffer an injury; "a plaintiff satisfies the injury-in-fact requirement where he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014) (internal quotation marks omitted).  In such a case, "an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Id.*

Real readily meets the first part of the *Susan B. Anthony List* standard because (1) he alleged an intention to open a

---

**[2]** Real readily meets the second and third prongs of the standing analysis.  His alleged inability to open a tattoo shop is fairly traceable to the zoning ordinances governing the locations and permitting of tattoo shops, and a decision finding those laws unconstitutional would likely redress his injury because he would be able to open a tattoo shop without the current restrictive requirements.

tattoo shop without a CUP; (2) "tattooing is purely expressive activity fully protected by the First Amendment," *Anderson*, 621 F.3d at 1055; and (3) the zoning ordinances proscribe his intended conduct.   Real also sufficiently alleged a credible threat of prosecution.   In his appellate brief, he argued that "the threat of enforcement against [him] is substantial," because the City "has vigorously defended its zoning ordinances in this case, and [he] has been explicitly told that he will be subject to zoning enforcement processes if he opens except as permitted by the zoning scheme."   The City has not denied these allegations, and has continued to defend its zoning ordinances.   It appears likely that the City would take action against Real if he opened a tattoo shop without a CUP; thus, he has standing to bring an as-applied challenge. *See Susan B. Anthony List*, 134 S. Ct. at 2342.

**III.     Real Raised a Cognizable Claim That the City's Zoning Ordinances Constitute an Unlawful Prior Restraint on Speech**

The district court erred by holding that the zoning ordinances could not constitute a prior restraint because they do not prohibit tattooing entirely.   An outright prohibition is not required to bring a prior restraint claim; rather, "a [licensing] scheme that places unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225–26 (2004) (internal quotation marks omitted); *see also Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1025 (9th Cir. 2009) ("Regulations must contain narrow, objective, and definite standards to guide the licensing authority and must require the official to provide [an] explanation for his decision.") (internal quotation marks and citation omitted). Additionally, "a prior restraint that fails to place limits on the

time within which the decisionmaker must issue [a] license is impermissible," because "a licensing scheme creates the possibility that constitutionally protected speech will be suppressed where there are inadequate procedural safeguards to ensure prompt issuance of the license." *FW/PBS*, 493 U.S. at 226.

Real alleged that the City's zoning ordinances (1) vest excessive permitting discretion with the City to issue or deny a CUP, and (2) do not contain adequate procedural safeguards because no time limits are placed on CUP decisions. *See id.* at 225–26. The Long Beach Code supports these allegations. First, the criteria to issue a CUP includes the open-ended determination that the use "will not be detrimental to the surrounding community including public health, safety or general welfare, environmental quality or quality of life." Long Beach Code § 21.25.206. Second, the Code does not include a deadline for City officials to grant or deny a CUP.[3] Thus, Real raised a cognizable prior restraint claim.

Because the district court granted the City's motion for nonsuit before the City presented its case, the City has not had the opportunity to present evidence on its permitting discretion or any procedural safeguards. Accordingly, we remand for the district court to try the City's defense.

**IV.** **Real Raised a Cognizable Claim That the City's Zoning Ordinances Constitute Unlawful Time,**

---

[3] Although Long Beach Code § 21.25.207 requires that the Zoning Administrator set a conditional use application for public hearing within 60 days of receiving a completed application, there is no deadline for a grant or denial of the CUP following the hearing.

**Place, or Manner Restrictions on Speech**

Like the plaintiff in *Anderson*, Real does not argue that the City's ordinances constitute a content-based restriction of protected expression subject to strict scrutiny. 621 F.3d at 1063–64. Instead, Real argues that the City unconstitutionally restricts a protected means of expression. *See id.* Thus, because "tattooing is a purely expressive activity fully protected by the First Amendment," the City's zoning ordinances are constitutional only if they are reasonable "time, place, or manner" restrictions on tattooing. *Id.* at 1055.

Time, place, or manner restrictions are reasonable if they are "(1) [] justified without reference to the content of the regulated speech; (2) [] narrowly tailored to serve a significant governmental interest; and (3) leave[] open ample alternative channels for communication of the information." *Id.* at 1064 (internal quotation marks omitted). While a government "need not [use] the least restrictive or least intrusive means" of serving its legitimate interests, the means must not be "substantially broader than necessary" and must "promote[] a substantial government interest that would be achieved less effectively absent the regulation." *Ward v. Rock Against Racism*, 491 U.S. 781, 798–800 (1989).

Because the City rested its case before it addressed whether its zoning ordinances constitute permissible time, place, or manner restrictions on tattooing, we remand for the district court to try the City's defense.

**CONCLUSION**

We **REVERSE** the district court's holdings that (1) Real did not adequately allege a facial challenge, (2) Real did not

have standing to raise an as-applied challenge, and (3) the City's zoning ordinances cannot constitute prior restraints on speech. We **REMAND** for the district court to try Real's facial and as-applied First Amendment claims, on the grounds that the City's zoning ordinances operate as unlawful prior restraints on speech and are unreasonable time, place, or manner restrictions on speech.[4]

---

[4] Appellant James Real's motion to take judicial notice, filed July 9, 2016, is **GRANTED**.