**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

EPONA, LLC, a California limited
liability company; MICHAEL
FOWLER, an individual,
*Plaintiffs-Appellants*,

v.

COUNTY OF VENTURA, a political
subdivision of the State of
California; DOES, 1–25,
*Defendants-Appellees.*

No. 17-55472

D.C. No.
2:16-cv-06372-
DMG-PLA

OPINION

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Argued and Submitted October 3, 2017
Pasadena, California

Filed December 7, 2017

Before: DIANA GRIBBON MOTZ,[*] MILAN D. SMITH,
JR., and JACQUELINE H. NGUYEN, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

# SUMMARY[*]

## Civil Rights

The panel reversed the district court's dismissal of appellants' First Amendment claim, affirmed the dismissal of appellants' Religious Land Use and Institutionalized Persons Act claim, vacated the denial of a preliminary injunction and remanded in an action challenging the County of Ventura's permitting scheme, which requires individuals to obtain a Conditional Use Permit to host weddings on their properties.

Applying *Kaahumanu v. Hawaii*, 682 F.3d 789 (9th Cir. 2012), the panel first held that appellants functioned as wedding "vendors" because they sought to profit from facilitating and providing a commercial space for weddings. The panel held that because they were wedding vendors, they may suffer economic injury as a result of the permitting scheme, and an injunction may redress this harm. Thus, the panel held that appellants had Article III standing to bring their First Amendment challenge.

The panel reversed the dismissal of appellants' First Amendment claim, holding that the permitting scheme lacked definite and objective standards and also failed to provide any limitation on the time period within which a permit must be approved. Together, these defects conferred unbridled discretion on permitting officials. The panel affirmed the dismissal of appellants' equal treatment claim

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

under the Religious Land Use and Institutionalized Persons Act because appellants did not assert that they were a religious institution or assembly. The panel vacated the district court's denial of appellants' motion for a preliminary injunction as to the First Amendment claim because the motion was no longer moot, and remanded to the district court for its consideration in the first instance.

## COUNSEL

Matthew D. Hinks (argued) and Benjamin M. Reznik, Jeffer Mangels Butler & Mitchell LLP, Los Angeles, California, for Plaintiffs-Appellants.

Ronda J. McKaig (argued), Assistant County Counsel; Leroy Smith, County Counsel; County of Ventura County Counsel, Ventura, California; for Defendants-Appellees.

## OPINION

M. SMITH, Circuit Judge:

Epona, LLC and Michael Fowler (collectively, Appellants) appeal the district court's order dismissing Appellants' First Amendment and Religious Land Use and Institutionalized Persons (RLUIPA), 42 U.S.C. § 2000cc *et seq.*, claims, and denying as moot Appellants' motion for a preliminary injunction. Appellants challenge the County of Ventura's (the County) permitting scheme, which requires individuals to obtain a Conditional Use Permit (CUP) to host weddings on their properties.

We reverse the dismissal of Appellants' First Amendment claim because the permitting scheme vests permitting officials with unbridled discretion. We affirm the dismissal of Appellants' equal treatment claim under RLUIPA because neither Appellant is a religious institution or assembly. We vacate the district court's denial of Appellants' motion for a preliminary injunction, and remand to the district court for its consideration in the first instance because the motion is no longer moot.

## FACTUAL AND PROCEDURAL BACKGROUND

Michael Fowler is Epona, LLC's sole member, and owns a 40-acre parcel of land (the property) in Ventura County. The property is zoned for agricultural use, and neighboring properties either are agricultural, or are designated as open spaces. Fowler created a garden area on the property, which he hoped to rent out for use in wedding ceremonies and related events.

The County's Non-Coastal Zoning Ordinance (NCZO) describes permissible land uses in specific zones. NCZO § 8105-4. Outdoor weddings are classified as "temporary outdoor" events under NCZO § 8102-0, which encompasses "[o]utdoor recreational events such as harvest festivals, amusement rides, historic re-enactments, animal events, art shows, concerts, craft fairs, weddings, and religious revival meetings." In order to hold a temporary outdoor event on an agriculturally zoned property, the landowner must apply for and receive a CUP.

The NCZO provides for issuance of a CUP when certain standards are satisfied, or where "such conditions and limitations, including time limits, as the decision-making authority deems necessary, are imposed to allow the standards to be met." *Id.* § 8111-1.2.1.1. At the time

Appellants applied for a CUP, the NCZO stated that a permit "may" issue if the applicant meets these standards, and required the permitting official to make "[s]pecific factual findings" that each standard "can be satisfied." After the initiation of this litigation, the County amended the CUP scheme to provide that a permit "shall" issue if the relevant standards have been satisfied, and to require specific factual findings in support of an application denial.[1] *Id.* Under both schemes, the applicant bears the burden of proving that all of the relevant standards can be met.

Appellants' CUP application sought permission to use the property for up to 60 temporary outdoor events per year, including weddings. County agencies reviewed the application, and found there were no grounds for denying the permit.

The County's Planning Commission held a public hearing on Appellants' application, at which County staff presented its no-impact findings. After receiving objections from neighboring land owners, the Commission denied the application. In a subsequently issued resolution, the Commission based its denial on the following findings:

> (1) The venue is not compatible with the rural community . . . ;
>
> (2) The venue has the potential to impair the utility of neighboring property or uses and is inconsistent with the finding set forth in the NCZO § 8111-1.2.1.1.c; and

---

[1] The amended CUP scheme is the subject of appeal in this case.

(3) The venue has the potential to be detrimental to the public interest, health, safety, convenience, or welfare and is inconsistent with the finding set forth in the NCZO § 8111-1.2.1.1.d[.]

Appellants appealed the denial of their CUP application to the Board of Supervisors. Contrary to its recommendation in the previous report, this time the Commission staff prepared a report that recommended denial of the CUP application. The Board split its vote evenly on the application, which had the effect of affirming the Commission's denial.

Appellants filed a complaint in federal district court on August 24, 2016, followed by an amended complaint on October 7, 2016, both of which alleged (1) abridgment of free speech in violation of the First Amendment and California Constitution Article 1, § 2; (2) violation of RLUIPA; (3) denial of equal protection under the United States and California Constitutions; (4) civil rights violations pursuant to 42 U.S.C. § 1983; (5) entitlement to a writ of mandate pursuant to California Code of Civil Procedure § 1094.5; and (6) a request for declaratory relief. Appellants also filed a motion for preliminary injunctive relief on November 4, 2016, seeking to enjoin enforcement of the amended CUP scheme. The County filed a motion to dismiss for failure to state a claim the same day.

The district court granted the County's motion to dismiss and denied Appellants' motion for a preliminary injunction. The district court held that Appellants could only challenge the CUP scheme as applied, and thus dismissed their facial challenge to the amended CUP scheme without leave to amend. The court then dismissed, with leave to amend,

Appellants' as-applied challenge for failing to plausibly allege that the CUP was improperly denied based on content. It further held that the CUP scheme did not grant unbridled discretion to permitting officials, and did not require time limits within which the County must act on a permit application because the scheme is content neutral. The court similarly dismissed Appellants' equal protection claims. The district court also found that Appellants had not shown either a substantial burden on religious exercise or unequal treatment as a religious assembly or institution under RLUIPA. Finally, the district court denied Appellants' motion for a preliminary injunction as moot because it had dismissed the entire amended complaint. Appellants timely appealed.[2]

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We review the district court's dismissal of Appellants' claims *de novo*. *Fayer v. Vaughn*, 649 F.3d 1061, 1063–64 (9th Cir. 2011) (per curiam). We review the district court's denial of a preliminary injunction for abuse of discretion. *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1045 (9th Cir. 1999).

## ANALYSIS

### I. Standing

The County argues that Appellants lack standing because (1) they failed to allege a sufficient nexus to the third parties whose rights they are asserting, (2) the affected third parties

---

[2] Appellants appeal the dismissal of their First Amendment claim, the dismissal of their RLUIPA equal terms claim, and the denial of their motion for preliminary injunctive relief.

are fully capable of asserting their own rights, and (3) Appellants' purported injuries are not redressable. These arguments fail.

In order to have Article III standing, a plaintiff must establish (1) that it has suffered an injury in fact that is both concrete and particularized, and actual or imminent; (2) causation, meaning that the injury is fairly traceable to the complained-of action; and (3) redressability, which requires a likelihood that the injury will be remedied by a decision in the plaintiff's favor. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). "Generally, a plaintiff may only bring a claim on his own behalf, and may not raise claims based on the rights of another party." *Pony v. County of Los Angeles*, 433 F.3d 1138, 1146 (9th Cir. 2006). However, "vendors and those in like positions have been uniformly permitted to resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function." *Craig v. Boren*, 429 U.S. 190, 195 (1976).

We addressed challenges similar to the County's first two arguments regarding third-party standing in *Kaahumanu v. Hawaii*, 682 F.3d 789 (9th Cir. 2012). There, a pastor who performed wedding ceremonies, and a non-profit association of wedding planners, challenged Hawaii's permitting scheme for commercial weddings on public beaches. *See id.* at 793, 795–96. We held that the association members, each of whom we characterized as a wedding "vendor," had standing to assert a First Amendment challenge to the permitting scheme.[3]  *Id*. at 797–98.  Application of the

---

[3] While the association was the plaintiff in *Kaahumanu*, it had standing only because its individual members had standing. *See Kaahumanu*, 682 F.3d at 797–98.

permitting scheme to commercial weddings caused an economic injury to wedding vendors who made a business out of organizing weddings. *Id*. at 797. Furthermore, the plaintiffs would have been subject to sanction if they had violated the permitting scheme and organized a wedding without authorization, which made them "a proper party in interest to object to [the scheme's] enforcement." *Id.* (quoting *Craig*, 429 U.S. at 193). The plaintiffs also had standing to assert the First Amendment rights of their potential clients because "'[t]he legal duties created by [the challenged regulations] are addressed directly to vendors such as [the plaintiffs]. [The plaintiffs are] obliged either to heed the regulatory prohibition, thereby incurring a direct economic injury through the constriction of [their] market, or to disobey the regulatory command and suffer' legal sanction." *Id.* at 798 (alterations omitted) (quoting *Craig*, 429 U.S. at 194).

The County's redressability argument fares no better. The County argues that Appellants' requested remedy—an injunction against the challenged provisions of the County's permitting scheme—would fail to redress Appellants' injury. The County reasons that (1) per County regulation, land use is prohibited unless specifically allowed, and (2) outdoor weddings are allowed only if an individual has a CUP under the NCZO; therefore, (3) if the CUP scheme is invalidated, there will be no means of acquiring a permit for outdoor weddings, and such weddings will be entirely disallowed. But application of the County's logic would effectively insulate every county permitting scheme from constitutional review. Rather than precluding outdoor weddings altogether, elimination of the CUP scheme as it applies to weddings would yield the result that "expressive activities protected by the First Amendment that previously were only *conditionally* permitted are now *unconditionally*

permitted." *See 3570 E. Foothill Blvd., Inc. v. City of Pasadena*, 912 F. Supp. 1268, 1281 (C.D. Cal. 1996) (emphasis in original). Therefore, an injunction could redress Appellants' injury.

As in *Kaahumanu*, Appellants function as wedding "vendors" because they seek to profit from facilitating and providing a commercial space for weddings. Because they are wedding vendors, they may suffer economic injury as a result of the CUP scheme, and an injunction may redress this harm.[4] Thus, pursuant to our holding in *Kaahumanu*, Appellants have Article III standing to bring their First Amendment challenge.

## II. First Amendment Claim

### A. Appellants can bring a facial challenge to the County's permitting scheme

In general, courts disfavor facial challenges to legislation. *S. Or. Barter Fair v. Jackson County*, 372 F.3d 1128, 1134 (9th Cir. 2004). However, the Supreme Court permits facial challenges to prior restraints of protected expression for two reasons: (1) such restraints may have a chilling effect on protected speech because potential speakers may choose to self-censor rather than either acquire a license or risk sanction for speaking without one; and (2) where a regulation lacks clear standards for the issuance of a permit, an as-applied challenge may fail to provide

---

[4] To the extent the injunctive relief sought by Appellants is overbroad, the district court could and should narrow it. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009) (discussing the district court's obligation to narrow injunctive relief to proscribe only unconstitutional conduct). But, the need to tailor any injunctive relief to Appellants' alleged harm does not impact Appellants' standing.

sufficient protection against content-based censorship.  *See City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757–59 (1988); *see also Barter Fair*, 372 F.3d at 1134–35. In accordance with these justifying principles, permitting schemes are subject to facial challenge if they "have a close enough nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat" that protected speech or conduct will be suppressed. *City of Lakewood*, 486 U.S. at 759; *see Real v. City of Long Beach*, 852 F.3d 929, 933 (9th Cir. 2017) (concluding a plaintiff can bring a facial First Amendment challenge to a CUP scheme "when he 'argue[s] that an ordinance . . . impermissibly restricts a protected activity'" (alterations in original) (quoting *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1033–34 (9th Cir. 2006))).

The County argues that Appellants may not bring a facial challenge to the CUP scheme because the NCZO does not directly regulate marriage ceremonies or their content.  The County supports its argument by reference to *Kaahumanu*, in which we held that the plaintiffs could only bring an as-applied challenge to a regulation requiring a permit for all commercial activity on state beaches, except to the extent that that regulation vested broad discretion in permitting officials.  *See Kaahumanu*, 682 F.3d at 800–02.

Two points are relevant.  First, unlike the regulation at issue in *Kaahumanu*, which applied broadly to every commercial activity on state beaches, the regulation at issue here expressly includes "weddings" as part of a list of regulated activities, and treats other commercial activities (most notably commercial filming) differently.[5]   Second,

---

[5] In *Kaahumanu*, we rested our rejection of the plaintiffs' facial challenge not only on the breadth of the regulation, but also on the

and more significantly, we did permit a facial challenge to the licensing scheme in *Kaahumanu* to the extent that the scheme gave permitting officials unbridled discretion to grant or revoke permits. *Id.* at 802. True, we require that the grant of discretion present a sufficient nexus to protected expression so as to pose a "real and substantial threat" of censorship. *Id.* (quoting *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1020 (9th Cir. 2009)); *see also Barter Fair*, 372 F.3d at 1135. But, where the activity to be permitted or not per the exercise of official discretion is a commercial wedding, this nexus requirement is satisfied. *See Kaahumanu*, 682 F.3d at 802; *see also Barter Fair*, 372 F.3d at 1136 (holding that a regulation giving discretion over allowing mass gatherings had "a sufficiently close nexus to conduct commonly associated with expression" to be subject to facial challenge).

Here, Appellants challenge the NCZO on the basis that it confers unbridled discretion on the permitting officials reviewing their application to hold commercial weddings. Thus, Appellants may bring a facial challenge.

## B. The NCZO grants permitting officials unbridled discretion

"While 'prior restraints are not unconstitutional *per se*[,] any system of prior restraint comes to [the court] bearing a heavy presumption against its constitutional validity.'" *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225 (1990) (alterations omitted) (quoting *Se. Promotions, Ltd. v.*

---

regulation's "failure to regulate in any manner who may officiate at a wedding, who may attend the wedding, what may be worn at a wedding, and what words may be spoken at a wedding," 682 F.3d at 801, which the presently challenged regulation also fails to regulate.

*Conrad*, 420 U.S. 546, 558 (1975)).  It is well settled that "an ordinance which . . . makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint." *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 151 (1969) (quoting *Staub v. City of Baxley*, 355 U.S. 313, 322 (1958)).  The heart of Appellants' argument is that the NCZO imposes an unconstitutional prior restraint on protected speech by vesting permitting officials with unbridled discretion due to the CUP scheme's (1) lack of definite and objective standards for granting a permit, and (2) failure to specify a timeframe within which a permit must be granted or denied.  If the NCZO grants permitting officials an impermissible degree of discretion, then the regulation fails to qualify as a valid time, place, and manner restriction on speech.  *See Kaahumanu*, 682 F.3d at 806–07.

1.  *The CUP scheme lacks definite and objective standards*

"[A] law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional."  *Shuttlesworth*, 394 U.S. at 150–51; *see also City of Lakewood*, 486 U.S. at 755–56.  That is, absent definite and objective guiding standards, permit requirements present a "threat of content-based, discriminatory enforcement."  *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1082 (9th Cir. 2006).  While permitting guidelines need not eliminate all official discretion, *see Ward v. Rock Against Racism*, 491 U.S. 781, 793–94 (1989), they must be sufficiently specific and objective so as to effectively place some "limits on the

authority of City officials to deny a permit," *Desert Outdoor Advert., Inc. v. City of Moreno Valley*, 103 F.3d 814, 819 (9th Cir. 1996).

Our cases reflect the context-specific nature of this unbridled discretion inquiry. In *Moreno Valley*, we struck down an ordinance under which, prior to granting a permit, officials were required to find that a structure or sign would not "have a harmful effect upon the health or welfare of the general public" or be "detrimental to the welfare of the general public . . . [or] to the aesthetic quality of the community or the surrounding land uses." *Id.* at 818–19. The abstract language of the ordinance, paired with the lack of any requirement that officials provide some "evidence to support the conclusion that a particular structure or sign is detrimental to the community," impermissibly granted officials "unbridled discretion in determining whether a particular structure or sign [would] be harmful to the community's health, welfare, or 'aesthetic quality.'" *Id*. at 819.

We subsequently rejected a First Amendment challenge to a permitting scheme in *G.K. Ltd. Travel*, holding that the sign code at issue there contained sufficient guidelines to avoid the dangers posed by unbridled official discretion. 436 F.3d at 1083. The code required that permitting officials assess whether a sign was "compatible with the surrounding environment." *Id*. While this requirement, standing on its own, provided little authoritative guidance, the terms "surrounding environment" and "compatibility" were explicitly defined elsewhere in the code by "a limited and objective set of criteria." *Id*. The code also provided additional safeguards by requiring that officials render application decisions within a limited time period and "state

the reasons for [each] decision to either grant or deny a permit so as to facilitate effective review." *Id.*

In a third case, *Desert Outdoor Advertising, Inc. v. City of Oakland*, 506 F.3d 798 (9th Cir. 2007), we addressed permitting guidelines that "f[ell] somewhere between the abstract standards invalidated in *Moreno Valley* and the more explicit criteria and procedural requirements upheld in *G.K. Limited Travel*." *Id.* at 807. Officials were required to determine whether (1) the denial of a variance from the applicable sign restrictions "would deprive the applicant of privileges enjoyed by owners of similarly zoned property," (2) a variance would confer a "special privilege" upon the applicant, and (3) strict compliance with the code would "result in practical difficulty or unnecessary hardship inconsistent with the purposes of the zoning restrictions, due to unique physical or topographic circumstances or conditions of design."[6] *Id.* at 806. We held that while the procedure's requirements were "somewhat elastic" and required "reasonable discretion to be exercised by the permitting authority," they nevertheless contained "appropriate standards cabining the [City's] discretion." *Id.* at 807 (alteration in original) (quoting *Moreno Valley*, 103 F.3d at 818).

As with the scheme in *City of Oakland*, the scheme here falls between *Moreno Valley* and *G.K. Ltd. Travel*. To obtain permit approval under the amended CUP scheme, an

---

[6] A fourth condition, that a variance "not adversely affect the character, livability, or appropriate development of abutting properties or the surrounding area, and [could] not be detrimental to the public welfare," was removed from the ordinance while the lawsuit was pending. *City of Oakland*, 506 F.3d at 801–02 (alteration in original).

applicant must prove "to the satisfaction of the appropriate decision-making authority," that seven conditions can be satisfied.  The proposed use must be:

(a) "consistent with the intent and provisions of the County's General Plan and of Division 8, Chapters 1 and 2, of the Ventura County Ordinance Code;"[7]

(b) "compatible with the character of surrounding, legally established development;"

(c) "not [] obnoxious or harmful, [and must not] impair the utility of neighboring property or uses;"

(d) "not [] detrimental to the public interest, health, safety, convenience, or welfare;"

(e) "compatible with existing and potential land uses in the general area where the development is to be located;"

(f) "on a legal lot; and"

---

[7] Chapter 1 describes the Code's purpose as: "to protect and promote the public health, safety and general welfare; to provide the environmental, economic and social advantages which result from an orderly, planned use of resources; to establish the most beneficial and convenient relationships among land uses and to implement Ventura County's General Plan."  NCZO § 8101-1.

(g) "approved in accordance with the California Environmental Quality Act and all other applicable laws."

NCZO § 8111-1.2.1.1.

The permitting official must be satisfied that every condition has been or will be met. *See id.* Thus, if one condition confers an impermissible degree of discretion, the specificity of a separate condition will not save the scheme.

Criteria (f) and (g), located "on a legal lot" and "approved in accordance with [CEQA]," are objective. Conditions (a) through (e), however, echo those that we previously have concluded do not provide sufficient guidance to permitting officials. Unlike *G.K. Ltd. Travel*, these standards are not defined elsewhere by a limited and objective set of criteria. In particular, conditions (c) and (d) mirror the requirements we struck down in *Moreno Valley* that a proposed use not "have a harmful effect upon the health or welfare of the general public" or be "detrimental to the welfare of the general public . . . [or] to the aesthetic quality of the community or the surrounding land uses." 103 F.3d at 818. In that case, we were particularly concerned about the combination of abstract language, and the lack of a requirement that permitting officials support their decision with objective evidence. *Id.* at 819.

The County argues that other provisions of the NCZO provide additional specific factors for permitting officials to consider when applying the CUP requirements, making the ordinance more akin to that upheld in *G.K. Ltd. Travel*. This argument is unsuccessful because these additional factors do not apply to the issuance of CUPs. Instead, they expressly apply "in establishing permit conditions" for development projects. NCZO § 8109-0.1. While planned developments

are governed by both section 8111-1.2.1.1 and section 8109-0.1, there is no indication that CUPs are governed by NCZO § 8109-0.1 and there is no cross reference between sections 8111-1.2.1.1 and 8109-0.1.  Therefore, the additional factors do not appear to apply to the issuance of a CUP.

The amended CUP scheme, however, differs from the scheme at issue in *Moreno Valley* in that it requires the permitting official to make "specific factual findings" to support an adverse decision.

We have explained that "requiring officials to state the reasons for a license denial provides an important check on official discretion by 'facilitat[ing] effective review of the official's determination' and 'ensur[ing] that the determination . . . is properly limited in scope.'" *Seattle Affiliate of Oct. 22nd Coal. to Stop Police Brutality, Repression and Criminalization of a Generation v. City of Seattle*, 550 F.3d 788, 801 (9th Cir. 2008) (alterations in original) (quoting *G.K. Ltd. Travel*, 436 F.3d at 1083).  The amended CUP scheme requires specific factual findings in support of a permit denial.  However, it is unclear whether the amendment requires the Commission to provide greater specificity than before.

On the one hand, at the public hearing in support of the amendment to the CUP scheme, the County stated that the amendments "do not make any substantive changes to the findings of approval for these permits," and specifically in regard to the newly explicit need for findings in support of a denial, it noted that the "board is already doing this."  This suggests that the amendment might not require any greater

specificity than before.[8]  On the other hand, the County also explained a new procedural requirement according to which the Commission would issue a factual report setting forth its recommendation on a permit application, which the Board would either adopt or, if it disagreed with the recommendation, respond with a resolution "formaliz[ing] and very clearly articulat[ing] the facts which preclude [it] from making the findings of approval."  This procedural change suggests a greater degree of specific fact finding is required under the amended regulation.

Neither the provision of specific guidelines nor a requirement of specific factual findings is "necessarily determinative of whether a statute confers excess discretion." *Id.* at 798–99.  Rather, we look to the totality of the factors to assess whether an ordinance "contains adequate safeguards to protect against official abuse." *Id.* at 799.  In light of the specific nature of this case and the

---

[8] Indeed, the facts of this case demonstrate that little specificity was required under the original scheme.  Here, the Commission supported its denial of Appellants' CUP application under the original scheme with findings that the proposed use (1) "is not compatible with the rural community," (2) "has the potential to impair the utility of neighboring property or uses and is inconsistent with finding [sic] set forth in the NCZO § 8111-1.2.1.1.c," and (3) "has the potential to be detrimental to the public interest, health, safety, convenience, or welfare and is inconsistent with the finding set forth in the NCZO § 8111-1.2.1.1.d." None of these findings is specific.  The first specifies that the proposed use is "not compatible" with the community, but provides no explanation as to why, and thus says no more than that the proposed use fails to meet condition (b).  Similarly, findings two and three each note the use's "potential" to violate one of multiple disjunctive conditions, then state only that the proposed use violates conditions (c) and (d), respectively. Neither explains why the use would be in violation nor what specific aspect of the given conditions would be violated.  The Commission's findings here provided little, if any, check on official discretion.

existence of multiple conditions that we previously have concluded are not definite and specific, the CUP scheme fails to provide definite and specific guidelines for permitting officials. *Cf. id.* ("Because Seattle has neither a binding interpretation of the Parade Ordinance nor any well-established practices governing the exercise of official discretion, the only question before us is whether the Ordinance, on its face, provides sufficient guidance to these officials.").

### 2.   *The CUP scheme lacks a time limit*

In *Freedman v. Maryland*, 380 U.S. 51 (1965), the Supreme Court set forth procedural safeguards required to render a prior restraint on speech constitutional. *Id.* at 58–59. Among these procedural requirements is a guarantee that the licensor "will, within a specified brief period, either issue a license or go to court," *id.* at 59, because "[w]here the licensor has unlimited time within which to issue a license, the risk of arbitrary suppression is as great as the provision of unbridled discretion," *FW/PBS*, 493 U.S. at 227; *see Real*, 852 F.3d at 935.

While the *Freedman* safeguards are not required for content-neutral time, place, and manner permit schemes, *see Thomas v. Chi. Park Dist.*, 534 U.S. 316, 322–23 (2002), a permitting scheme is not "content neutral" if it vests unbridled discretion in a permitting official, s*ee Kaahumanu*, 682 F.3d at 806 (adopting the view that "the viewpoint neutrality requirement includes the prohibition on a licensing authority's unbridled discretion"); *see also Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130 (1992) (noting that unbridled discretion raises specter of viewpoint discrimination); *City of Lakewood*, 486 U.S. at 763–64 (same). Because the CUP scheme lacks adequate standards for official decision making and specifically

targets weddings, it necessarily also requires the time limitation contemplated by *Freedman*. *Cf. Real*, 852 F.3d at 935 (concluding a tattoo artist raised a cognizable prior-restraint claim where the ordinance vested excessive discretion with the permitting city and lacked time limits to grant or deny a CUP); *Seattle Affiliate*, 550 F.3d at 798 (noting the Supreme Court's concern about statutes that do not contain mechanisms for review of decisions).

The NCZO does not itself identify any specified time period within which a permitting decision must be made. Citing *Citizens for Free Speech, LLC v. County of Alameda*, 114 F. Supp. 3d 952, 965–66 (N.D. Cal. 2015), the County argues that the California Permit Streamlining Act (CPSA) provides a time limit that cabins official discretion. We disagree. The CPSA only applies to "development projects" as defined in California Government Code § 65928, which "includes a project involving the issuance of a permit for construction or reconstruction *but not* a permit to operate." *Id.* (emphasis added). Because a permit to host weddings will not necessarily require construction or reconstruction, the CPSA time limits do not apply. *See 3560 E. Foothill Blvd.*, 912 F. Supp. at 1276 (finding that the time limits provided by the CPSA do not limit the timeframe for issuing a permit on a specific use of property where neither construction nor reconstruction would necessarily be required).

The NCZO's failure to provide any limitation on the time period within which a permit must be approved further compounds the problem created by the lack of definite standards for permitting officials. *See, e.g.*, *FW/PBS*, 493 U.S. at 226–27. Together, these defects confer unbridled discretion on permitting officials in violation of the First Amendment. *See Real*, 852 F.3d at 935. We

therefore reverse the district court's dismissal of Appellants' First Amendment claim.

## III.    RLUIPA Equal Treatment Claim

To bring an equal treatment claim under RLUIPA, "(1) there must be an imposition or implementation of a land-use regulation, (2) by a government, (3) on a religious assembly or institution," and (4) the regulation must treat the religious assembly or institution "on less than equal terms with a nonreligious assembly or institution." *Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163, 1170–71 (9th Cir. 2011); *see* 42 U.S.C. § 2000cc(b)(1). Appellants do not argue that they are a religious assembly or institution. Instead, they contend that a plaintiff need not be a religious assembly or institution in order to bring an equal treatment claim.

In *Centro Familiar*, when discussing the plaintiff's equal terms claim, we held that "the government, not the religious institution," bears the burden of persuasion "once the religious institution establishes a prima facie case." *Centro Familiar*, 651 F.3d at 1171. This repeated reference to "religious institution" indicates that a plaintiff must be a religious assembly or institution to bring an equal terms claim, and we so hold. Consistent with this holding, the Third, Fifth, and Eleventh Circuits also require that a RLUIPA plaintiff be a religious assembly or institution in order to bring an unequal treatment claim. *See Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 290 (5th Cir. 2012) (finding appellant was a religious assembly or institution); *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 270 (3d Cir. 2007); *Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward County*, 450 F.3d 1295, 1307–08 (11th Cir. 2006); *see also Tree of Life Christian Schs. v. City of Upper Arlington*,

823 F.3d 365, 377–78 (6th Cir. 2016) (White, J., concurring in part and dissenting in part) (citing *Primera Iglesia*, 450 F.3d at 1307).

Appellants advance two more arguments regarding their equal terms claim. First, they contend that they may bring an equal terms claim because the use of their property for weddings falls within RLUIPA's definition of religious exercise. However, the cases cited by Appellants all involve a substantial burden claim, of which religious exercise is an element. *See, e.g.*, *Westchester Day Sch. v. Village of Mamaroneck*, 504 F.3d 338, 347–48 (2d Cir. 2007); *see also* 42 U.S.C. § 2000cc(a)(1). Because religious exercise is not an element in the equal treatment analysis, this argument is unavailing. *See* 42 U.S.C. § 2000cc(b)(1). Second, Appellants argue that Article III standing is enough to bring any RLUIPA claim. While Appellants are correct that standing under RLUIPA "shall be governed by the general rules of standing under Article III," 42 U.S.C. § 2000cc-2(a), Appellants must still satisfy the elements for an equal terms claim to prevail thereon. Because Appellants are not a religious assembly or institution, the district court's dismissal of Appellants' equal treatment claim was proper.

## IV.    Preliminary Injunction

After the district court dismissed all of Appellants' claims, it denied Appellants' motion for a preliminary injunction as moot. The district court never considered whether Appellants had demonstrated a likelihood of success or irreparable harm, nor whether the balance of equities and public interest favor injunctive relief. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

Because we reverse the district court's dismissal of Appellants' First Amendment claim, Appellants' motion for a preliminary injunction is no longer moot. Therefore, we vacate the district court's denial of the motion on that ground. But, because "[a] preliminary injunction is an extraordinary remedy never awarded as of right," *Winter*, 555 U.S. at 24 (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)), and "[t]he grant of a preliminary injunction is a matter committed to the discretion of the trial judge," *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984), we remand this case to the district court for consideration of all the *Winter* factors in the first instance. *See Evans v. Shoshone-Bannock Land Use Policy Comm'n*, 736 F.3d 1298, 1307 (9th Cir. 2013).

## CONCLUSION

For the foregoing reasons, we reverse the district court's dismissal of Appellants' First Amendment claim, affirm the district court's dismissal of Appellants' RLUIPA equal treatment claim, vacate the denial of Appellants' motion for a preliminary injunction, and remand to the district court for consideration of the motion for a preliminary injunction.

Each party shall bear its own costs on appeal. *See* Fed. R. App. P. 39(a)(4).

REVERSED IN PART, AFFIRMED IN PART, VACATED IN PART, REMANDED.